IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| INNOVIUS, LLC,<br><br>                Plaintiff,<br><br>v.<br><br>SHARP CORPORATION,<br><br>                Defendant. | Civil Action No.: 1:21-cv-00906<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Innovius, LLC makes the following allegations against Defendant Sharp Corporation:

**NATURE OF THE ACTION**

1. Plaintiff Innovius, LLC ("Innovius") is a Dallas-based company devoted to assisting patent owners and product manufacturers reach agreement on patent licenses. In November 2017, an affiliate, Innovius International Limited, entered into a contract referred to as the Binding Term Sheet with Defendant Sharp Corporation ("Sharp") to assist Sharp in licensing some of its patents to a third-party licensee. Innovius International Limited assigned all of its rights and obligations under the Binding Term Sheet to Innovius effective November 1, 2017. Under the Binding Term Sheet, if Sharp licensed its patents directly to the third-party licensee during the term of the Binding Term Sheet or within six months after its termination, then Sharp was required to pay Innovius an amount calculated based on the gross royalty revenues agreed to by the third-party licensee under the license to Sharp's patents.

2. For more than a year, Innovius performed services under the Binding Term Sheet to license Sharp's patents to the third-party licensee. Innovius's work included extensive licensing discussions and meetings with the third-party licensee. In February 2019, Sharp exercised its right

to terminate the Binding Term Sheet by giving the requisite advance notice to Innovius. Then, within six months of the effective date of termination, Sharp licensed its patents to the third-party licensee. As a result, under the express terms of the Binding Term Sheet, Sharp was contractually obligated to pay Innovius a fee calculated based on the gross royalty revenues agreed to by the third-party licensee under the license to Sharp's patents.

3.  Although Sharp received material cash payments and patents from the third-party licensee under their license agreement, Sharp refused to pay Innovius its earned fee, in breach of the Binding Term Sheet. Innovius therefore brings this action to collect the fee that Sharp is contractually obligated to pay.

## PARTIES

4.  Plaintiff Innovius is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business at 1717 McKinney Avenue, Suite 1050, Dallas, Texas 75202.

5.  Defendant Sharp is a corporation organized and existing under the laws of Japan with its principal place of business at 1 Takumi-cho, Sakai-ku, Sakai City, Osaka 590-8522 Japan. Under a stipulation between the parties, Sharp's counsel has agreed to accept service of this complaint.

## JURISDICTION AND VENUE

6.  The Court has subject matter jurisdiction because, pursuant to 28 U.S.C. § 1332(a)(2), there is complete diversity between the parties and the amount in controversy exceeds $75,000.

7.  This Court has personal jurisdiction over Sharp because the parties, for purposes of this action, by stipulation: (a) consented to the personal jurisdiction of this Court; (b) waived any

objections as to the personal jurisdiction of this Court; and (c) agreed not to assert any defenses based on lack of personal jurisdiction of this Court.

8. Venue is proper because the parties, for purposes of this action, by stipulation: (a) agreed that this Court is a proper venue and forum; (b) waived any objections that this Court is an improper venue or forum; and (c) agreed not to contest the propriety of venue or forum in this Court in any way.

## THE BINDING TERM SHEET

9. Sharp and Innovius International Limited executed the Binding Term Sheet effective as of November 1, 2017. Innovius International Limited then assigned its rights and obligations under the Binding Term Sheet to Plaintiff Innovius effective November 1, 2017.

10. The Binding Term Sheet governed the parties' rights and obligations concerning their relationship, and included the following:

- "Sharp hereby agrees to engage Innovius, on a non-exclusive basis, to negotiate and execute a license of the Sharp Licensed Patents to [the third-party licensee] by means of either a sublicense through Innovius or a direct license from Sharp."

- Innovius has the right to "negotiate and execute a license" of certain Sharp patents, designated the "Sharp Licensed Patents," with the third-party licensee, set forth in a written agreement called the third-party licensee "License Agreement."

- Sharp would "pay to Innovius [a specified percentage] of gross royalty revenues (including any amounts paid for the release of past sales) agreed by [the third-party licensee] under the [third-party licensee] License Agreement (the 'Services Fees')."

11. In short, Sharp gave Innovius the right to license Sharp's patents to the third-party licensee, and depending upon the progression of the licensing discussions, Innovius would either itself sublicense the patents to the third-party licensee or arrange for a direct license between Sharp and the third-party licensee. As discussed further below, in either such event, and even if Sharp executed its own license with the third-party licensee, Sharp was obligated to pay the fee due to Innovius under the Binding Term Sheet.

12. In the Binding Term Sheet, the parties agreed on its length and the effect of a notice of termination. The Binding Term Sheet had an initial term of "eighteen months from the effective date of this Term Sheet with auto renewal for successive one-year periods." Either party could provide "written notice" to terminate the Binding Term Sheet, but the written notice was required to be provided "not later than two months before the end of the then-current term." If that requirement was satisfied, then the termination would become effective at the end of the then-current term.

13. In addition, the Binding Term Sheet had a six month "tail" that protected Innovius in the event Sharp attempted to avoid paying Innovius a fee by terminating the Binding Term Sheet and licensing its patents directly to the third-party licensee soon thereafter: "The Service Fees set forth above will remain the same and will be paid to Innovius if Sharp licenses the Sharp Patents directly to [the third-party licensee] during the term of this Term Sheet *or within six months after the termination of this Term Sheet*." (emphasis added).

14. Consequently, Sharp was entitled to terminate the Binding Term Sheet and pursue its own licensing negotiations with the third-party licensee. But Sharp's notice of termination only prevented the Binding Term Sheet from automatically renewing at the end of its original eighteen-month term. It did not absolve Sharp of its duty to pay Innovius. To the contrary, Sharp was contractually obligated to pay the Services Fees to Innovius if Sharp licensed its patents to the third-party licensee during the original eighteen-month term or during the six-month "tail" following termination.

### INNOVIUS'S NEGOTIATIONS AND THE LICENSE AGREEMENT

15. For over a year, Innovius engaged in extensive licensing discussions with the third-party licensee on Sharp's behalf. In addition to numerous video conferences and telephone calls,

Innovius personnel also met with the third-party licensee many times in person. Innovius negotiated with the third-party licensee over the price of the license agreement, and it also drafted, revised, and negotiated a draft license agreement under which Sharp would license its patents to the third-party licensee. Despite reaching agreement on nearly every non-monetary term, Sharp and the third-party licensee did not execute a final license agreement while Innovius remained involved in the licensing negotiations.

16. On February 12, 2019, Sharp sent a letter to Innovius's Dallas office invoking its right to terminate the Binding Term Sheet. Under the express language of the Binding Term Sheet, Sharp's notice of termination took effect at the conclusion of the initial fixed eighteen-month term, which was April 30, 2019.

17. Although the Binding Term Sheet terminated on April 30, 2019, Sharp remained contractually obligated to pay the Services Fees to Innovius if Sharp licensed its patents to the third-party licensee within the six-month "tail" following termination, which would be through October 31, 2019. That is exactly what happened: Sharp licensed its patents to the third-party licensee through a license agreement that, by its terms, became effective on June 28, 2019 (the "Sharp License Agreement") – less than five months after Sharp sent its termination notice to Innovius and less than three months after the termination notice took effect. The third-party licensee paid Sharp millions of dollars in cash and assigned patents to Sharp pursuant to that agreement.

18. Because Sharp licensed the "Sharp Licensed Patents" to the third-party licensee within six months after the termination of the Binding Term Sheet, Sharp owes Innovius the Services Fees calculated based on all gross royalty revenues agreed to by the third-party licensee under the Sharp License Agreement, including the value of the patents that the third-party licensee

assigned to Sharp pursuant to the Sharp License Agreement. The Services Fees that Sharp owes Innovius exceed $75,000. Yet Sharp has breached its contractual obligation and refused to pay Innovius its fee.

## COUNT 1

## BREACH OF CONTRACT

19. Innovius incorporates by reference all allegations contained in this Complaint as if fully set forth herein.

20. Innovius and Sharp entered into the Binding Term Sheet, which is a valid and enforceable contract.

21. Innovius performed its obligations under the Binding Term Sheet by, among other things, attempting to negotiate a potential patent license agreement on Sharp's behalf with the third-party licensee.

22. Sharp licensed the "Sharp Licensed Patents" to the third-party licensee within six months after the termination of the Binding Term Sheet, so Sharp owes Innovius the Services Fees calculated based on all gross royalty revenues that the third-party licensee has paid Sharp, including the value of the patents that the third-party licensee assigned to Sharp pursuant to the Sharp License Agreement.

23. Sharp breached the Binding Term Sheet by refusing to pay Innovius its Services Fees after Sharp and the third-party licensee executed the Sharp License Agreement.

24. As a result of Sharp's breach of contract, Sharp has caused Innovius to incur damages in an amount to be determined at trial.

## COUNT 2

## QUANTUM MERUIT

25. Innovius incorporates by reference all allegations contained in this Complaint as if fully set forth herein and alleges the following in the alternative.

26. Innovius rendered valuable services to Sharp by assisting Sharp in the licensing of its patents to the third-party licensee.

27. Sharp accepted, encouraged, and enjoyed the patent-licensing services Innovius performed on Sharp's behalf.

28. Innovius reasonably notified Sharp that in performing its patent-licensing services for Sharp, it expected to be paid by Sharp for those services.

29. Innovius should be compensated for the reasonable value of its patent-licensing services in an amount to be determined at trial.

## DEMAND FOR JURY TRIAL

30. Innovius hereby demands a jury trial for all issues so triable.

## PRAYER FOR RELIEF

Innovius requests the following relief:

A. The Court find that Sharp has breached the Binding Term Sheet;

B. The Court award Innovius compensatory damages in a sum equal to the Services Fees that Sharp was obligated to pay Innovius under the Binding Term Sheet in an amount to be determined at trial;

C. The Court find that Sharp is liable to Innovius under a theory of quantum meruit;

D. The Court award Innovius the reasonable value of its services in a sum to be determined at trial;

  E.  The Court award Innovius reasonable and necessary attorneys' fees and expenses;

  F.  The Court award Innovius prejudgment and post-judgment interest at the highest lawful rate, court costs, and costs of suit; and

  G.  The Court grant Innovius such other and further relief as may be just and proper.

Date: February 2, 2021        Respectfully submitted,
New York, New York

               */s/ William Christopher Carmody*
               William Christopher Carmody
               Zachary B. Savage
               Susman Godfrey L.L.P.
               1301 Avenue of the Americas, 32nd Floor
               New York, New York 10019
               Telephone: (212) 336-8330
               Facsimile: (212) 336-8340
               bcarmody@susmangodfrey.com
               zsavage@susmangodfrey.com

               Matthew R. Berry (*pro hac vice* forthcoming)
               Susman Godfrey L.L.P.
               1201 Third Avenue, Suite 3800
               Seattle, WA 98101
               Telephone: (206) 516-3880
               Facsimile: (206) 516-3883
               mberry@susmangodfrey.com